### S. F. LINER ET AL. v. J. B. WATKINS LAND MORTGAGE COMPANY.

#### Decided April 30, 1902.

**1.—Pledge of Notes—Action by Pledgor.**

Where commercial paper is pledged under an agreement that all actions on past due notes shall be brought and prosecuted by the pledgor, the defendant in such an action can not complain that it is so brought, since the judgment will fully protect him, especially where the pledgee becomes a party to the suit by intervention.

**2.—Same—Possession and Title.**

Since the beneficial interest in the note was in the pledgor, the defendant in such action was not entitled to have the court instruct a verdict in her favor because the legal title of the note was in the pledgee, and it also had possession of the note at the time the suit was brought.

**3.—Same—Parol Evidence—Written Contract.**

Defendant being a stranger to the written contract of pledge, was not entitled to urge that a modification thereof which the parties had made could not be shown by parol evidence.

**4.—Assignment of Error.**

An assignment that the court erred in instructing a verdict for plaintiff "because the evidence supports the several defenses plead by defendant," is too general.

**5.—Limitations—Note—Absence from State.**

Where a note fell due February 1, 1891, and the maker was then temporarily absent from the State, remaining away until the fall of 1893, a suit brought on the note January 27, 1896, was not barred by the four years statute of limitations, since the time he was so absent is excluded.

**6.—Vendor's Lien—Judgment—Alternative Relief.**

Where plaintiff prayed for foreclosure of a vendor's lien and in the alternative to recover the land itself, and the undisputed evidence showed that he was entitled to such a recovery, defendant could not complain of a judgment foreclosing the lien, no personal judgment except for costs being rendered against defendant.

Appeal from Ellis.   Tried below before Hon. J. E. Dillard.

*Lancaster & Beall* and *T. B. Williams,* for appellants.

*Templeton & Harding, Jack & Jack, S. P. Skinner,* and *G. C. Groce,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an appeal by Cordelia Parrish, the surviving wife of Robert Parrish, deceased, from a decree establishing a debt of $5324 as a vendor's lien as against her and the minor children of her deceased husband upon a certain tract of 200 acres of land, and foreclosing such lien; no personal judgment, other than for the costs incurred by her and the minors in defending the suit, was taken against her or the minors.   The decree as to her and the minors simply establishes and forecloses the lien upon the land, and orders it to be sold in satisfaction of the debt adjudged against S. F. Liner as the maker and J. M. Smith as the indorser of four certain promissory notes given as part of the purchase money.

The decree appealed from was entered in a suit brought by the J. B. Watkins Land Mortgage Company on January 27, 1896, against S. F. Liner as the maker of the notes, and J. M. Smith as the indorser of them, and against Robert Parrish, who was alleged in the original petition to have assumed the payment of them.

Robert Parrish having died, appellee, his widow and his minor children, were made parties defendant, and a foreclosure of the vendor's lien only was asked for as against them.

On June 3, 1901, the J. B. Watkins Land Mortgage Company filed its fourth amended original petition, in which, after alleging that it was the legal holder of the notes sued on, it averred that it also held the legal title to the land for which they were given, and prayed for judgment on the notes with foreclosure of the vendor's lien, and in the alternative for title to the land if for any reason the court should decide it was not entitled to judgment on the notes.

On May 20, 1901, the Farmers Loan and Trust Company filed its original bill of interpleader, submitting itself to the jurisdiction of the court, and offering to be bound by any judgment that might be rendered in the case, and disclaimed any interest in the notes sued on so far as defendants were concerned.

On June 14, 1901, appellant and the children of Robert Parrish filed their second original answer in which they plead, first, that appellee was not the legal owner and holder of the notes sued on at the institution of the suit, and was not, when the answer was filed, the owner of them; and second, the plea of limitation as to both appellant and the Farmers Loan and Trust Company.

*Conclusions of Fact.*—On December 18, 1888, J. M. Smith and wife conveyed S. F. Liner 200 acres of land of W. G. Bell survey situated in Ellis County, Texas. The deed recites as the consideration four promissory notes and that they reserve a vendor's lien to secure payment. The notes were for $500 each, were executed on the same day the deed was, by Liner, payable to J. M. Smith or order respectively on the 1st day of February, 1891, 1892, 1893, and 1894, with interest at the rate of 10 per cent per annum from the 1st day of February, 1889, to maturity, and at the rate of 12 per cent per nnum from maturity until paid. The notes provided for the payment of interest annually and for 10 per cent additional on principal and interest in case of legal proceedings as attorney's fees. Each note expressly reserves a vendor's lien on the land to secure its payment.

On January 15, 1889, S. F. Liner by his deed of that date, reciting a consideration of $5000, reconveyed the land to J. M. Smith.

On November 8, 1893, J. M. Smith, by deed of that date, expressing a consideration of $500, and the further consideration of "Parrish assuming and agreeing to pay off and discharge four certain promissory notes of $500 each, executed by S. F. Liner and payable to J. M. Smith or order (the notes sued on), which notes are now held by the J. B.

Watkins Land Mortgage Co., and hold a vendor's lien on the land," conveyed the 200 acres to Robert Parrish.

The four notes sued on were indorsed in blank by J. M. Smith, and sold and delivered by him, before maturity, for value, to appellee. The money received by Smith was used by him in paying off a mortgage then existing against the land sold by him to Liner as well as against the remaining portion of the tract (120 acres) then owned and retained by him, which mortgage was executed and in existence before the death of Smith's wife, which occurred prior to his conveyance to Parrish. Parrish took possession of the land under the deed.

Robert Parrish died in 1897, subsequent to the institution of this suit against him, leaving his wife, Cordelia, and minor children, Ed, Bunyan, Jeff, and Ruel, as his heirs in possession of the land as their homestead.

S. F. Liner moved from Tennessee to Texas in 1887; left Texas in 1889 and returned in 1893; and in December, 1894, abandoned Texas and has ever since resided in the State of Tennessee.

Though the deed before referred to from Liner to Smith expresses a consideration of $5000, nothing in fact was ever paid, nor did Parrish pay anything on his purchase.

By an amended original petition, filed May 3, 1897, T. W. Ford, by leave of the court, came into the case and prosecuted it as receiver of the J. B. Watkins Land Mortgage Company, under appointment of the United States Court of the Eastern District of Texas, made on September 8, 1896. The order appoints him receiver of the assets of the J. B. Watkins Land Mortgage Company in Texas, and requires him to act in conjunction with the main receiver appointed in Kansas; the receivership in Texas being ancillary to the one in the other State. The order contains the following provisions: "The receiver is directed not to disturb or in any way interfere with the possession of the Farmers Loan and Trust Company of the property held by it as trustee for the payment of debentures issued by said land mortgage company and secured without the further order of this court."

And further: "All persons and corporations, other than the Farmers Loan and Trust Company, including the officers, agents, and employes of the land mortgage company, are hereby commanded and enjoined to surrender and deliver to said receiver upon his request and demand all property of every kind or description whereof he is hereby and herein appointed receiver."

On the 11th day of April, 1900, T. W. Ford was discharged from the receivership by an order of the court which appointed him, and he was directed by said court to turn over and deliver to the land mortgage company all the property and effects of the company of every kind and character. Whereupon the land mortgage company, by leave of the court, again appeared as plaintiff and prosecuted the suit to final judgment.

On the 22d day of December, 1898, J. M. Smith, by his deed of that date, in consideration of his indorsing the Liner notes to the Watkins

Land Mortgage Company, conveyed to appellee the land for which the notes were given. The deed recites that the grantor is the owner of the superior title to the land and that he conveys all his interest therein to the appellee.

In January, 1889, the Farmers Loan and Trust Company received the Liner notes from the J. B. Watkins Land Mortgage Company to be held as security for the payment of certain debenture bonds issued by the land mortgage company. There was a written contract between the two companies, which among other things, provided that the latter might from time to time withdraw any of the securities by replacing others; and that the loan and Trust company was to act as depository for the securities placed in its hands. In the course of dealing between the companies it was agreed and understood that the land mortgage company should protect all notes and securities by commencing suit before the notes should become barred by the statute; that it was the duty of that company to commence all actions on past due paper, and that the trust company was under no obligation to bring such suits, but that such duty and obligation rested alone upon the land mortgage company. Under the course of dealing between the companies, and in accordance with the agreement between them, the land mortgage company had the right and it was its duty to bring actions in its own name on its paper deposited with the trust company to collect thereon and foreclose liens given thereby when due; and that the land mortgage company might successfully prosecute such suits in its own name, the trust company would forward the evidence of indebtedness to any bank in Texas or to the clerk of the district court of the county when the suit was brought to be used upon the trial of the cause. It was in pursuance of the arrangement, agreement, and understanding between the parties that this suit was originally instituted by the appellee.

And in October, 1896, the trust company sent the notes to the Citizens National Bank of Waxahachie, Texas, accompanied by a letter to the bank explaining how the Farmers Loan and Trust Company held the notes, and asking the bank to do what was needful in the way of presenting them to the clerk of the district court of Ellis County to secure the lien. In a P. S. to the letter the bank was told that the Farmers Loan and Trust Company was entitled either to the papers or their proceeds. The notes were forwarded to the bank at the request of appellee. By letter of May 21, 1898, the Farmers Loan and Trust Company was advised that said bank had declined to deliver the notes to the attorneys of the land mortgage company, and on May 26, 1898, the bank was wired to so deliver said notes.

The testimony shows that under the contract between the companies of June 29, 1897, the proceeds of the notes less the costs of collection are to be returned to the Farmers Loan and Trust Company.

Nothing has ever been paid on the notes either to the trust company or appellee.

*Conclusions of Law.*—1.   It is urged by appellant that the trial court erred in refusing to give certain special charges asked by her, the purport of which was to instruct the jury that if at the time of the institution of this suit the appellee was not the legal owner and holder of the notes sued on, but that they were at the same time in the possession of the Farmers Loan and Trust Company for the purpose of securing the holders of certain debenture bonds issued by the land mortgage company, then it had no right to institute this suit, and in such event to find for appellant.

As a general rule the pledgee of commercial paper, as was the Farmers Loan and Trust Company in this instance, takes it as a trustee for the holder and pledgor; and as such it is the pledgee's duty to hold the collatteral and collect it at its maturity, and may proceed to collect it by suit; and in such suit it is not necessary to join the pledgor as a party, or set out the plaintiff's interest as that of a pledgee.   Rand. on Com. Paper, secs. 795, 796.   But it does not follow from these general principles that the pledgee and pledgor may not, at the time the paper is pledged or at any time while in the hands of the pledgee, by an agreement and understanding between themselves, provide and arrange that suit may be brought and prosecuted by and in the name of the pledgor against those in any way liable or adversely affected by the paper pledged. A suit by the pledgor under such an agreement, when prosecuted to judgment, would relieve the defendants of any further liability on the paper, and bar any action thereon against them by the pledgee.   It is immaterial to the maker, indorsee, or anyone else obligated or affected by the paper, whether the suit is brought and prosecuted to judgment by the pledgee or pledgor, as long as such suit and the judgment rendered in it fully protects them from any further liability on the paper to the one or the other.   As is seen by our conclusions of fact, the evidence establishes an agreement between the appellee and the Farmers Loan and Trust Company that when it became necessary to collect paper deposited by the former as security for its debentures with the latter, the former should institute and prosecute such suit in its own name, and that the evidence of indebtedness would be forwarded by the trust company to be used in support of the action by the land mortgage company upon the trial of the cause.   The special charges requested by appellant ignored such agreement between the two companies, and would have required the jury under the other facts, which were undisputed, to return a verdict in favor of appellant.   To our minds it is clear that this would have been error, for it would have deprived both appellee and the trust company of the benefit of an agreement that they had as between themselves the right to make, and in which appellant had no further interest than is above stated.   Under such agreement it was not the duty of the trust company nor was it under any obligation to incur the expense of instituting and prosecuting a suit upon the notes in its own name.   The duty perforce of the agreement devolved upon the appellee to institute and prosecute the suits on the paper at its own expense and in its own name.

This the appellee undertook to and did do, and the trust company having made itself party to the action, appellant was not injured and has no right to complain.

2. It is urged in the second assignment of error that the court erred in refusing to charge the jury peremptorily to find for defendants, for the reason the uncontroverted evidence shows that the notes sued on were not in possession of plaintiffs at the institution of the suit, nor had been for several years prior thereto and did not come into its possession for more than two years after the institution of the suit, and that the legal title to the notes was at all times in the Farmers Loan and Trust Company.

What we have said in relation to the preceding assignment of error we think effectually disposes of this one adversely to appellant. We can not bring ourselves to believe that the undisputed facts in this case would furnish any warrant for a peremptory instruction in favor of the defendants. On the contrary, we believe they clearly and conclusively establish the right of the appellee as against appellant to a foreclosure of the vendor's lien upon the land in controversy. So clearly is this right established by the uncontroverted testimony, that we believe equity and justice require a peremptory instruction in favor of the appellee. While strictly speaking the trust company had the legal title to the notes, the evidence shows that it held them as trustees, and that appellee had a beneficial interest in them, or was, in fact, the real owner of them. It had the right under its agreement to demand and obtain possession of the notes to be used as evidence whenever suit was brought on it to protect its, as well as the pledgee's, interest. Where the owner and holder of a note places it in the hands of a third party as collateral security, he is still the real owner, and has the right to bring suit thereon against the maker, but should make the pledgee a party, or the pledgee should make itself a party to the suit. The failure to make the pledgee a party at the time the suit was instituted was simply a nonjoinder of a proper party, which to be available should have been plead in abatement and presented within the time prescribed by statute for such pleas. No such plea was interposed by appellant, and the trust company having voluntarily made itself a party, and asked to be bound by such judgment as might be rendered in the suit, appellant is in no attitude to complain of the proceedings.

3. The construction and interpretation of the contract between the trust company and appellee were matters entirely between the contracting parties. It could by their mutual consent be abrogated, modified, construed, or changed in any way they saw proper, and a stranger to the contract is in no attitude to complain. Even as between parties to a written contract, parol testimony is admissible to show that after its execution other agreements were made by which the contract or a portion of it was altered, changed, or modified. If such evidence is admissible as between the parties, it certainly should be admitted against a third party when he attempts to show that under the written contract an action on paper held under it brought by one of the parties would be barred by

the statute of limitation. To hold otherwise would place him in a better attitude, by reason of a contract that he is not a party to and in which he has no interest, than a party to the original agreement; and enable him to use the contract as a weapon against the parties which neither of them could do as between themselves. We think, therefore, that the court did not err in admitting the testimony of Edwin Morston complained of by appellant in her third assignment.

4. The fourth assignment of error is: "The court erred in directing the jury peremptorily to find for plaintiff, because the evidence supports the several defenses plead by defendant." We think this assignment is too general to require our consideration. We can not from it determine whether the proposition submitted thereunder is applicable or not. But as we have anticipated this assignment by holding that the undisputed testimony was such as to require a peremptory instruction for the appellee, further consideration of it will be unnecessary, even though it were not objectionable in form.

5. The first note fell due on February 1, 1891. At that time Liner, the maker, was temporarily absent from the State, and his absence continued until the fall of 1893. He and Smith both testified to his absence, and there is no evidence to the contrary. As is seen from our statement of the case, the suit was brought on January 27, 1896. Therefore, excluding the time Liner was temporarily absent from the State after maturity of the notes, the suit was not barred by the four years statute when instituted.

6. The judgment against Mrs. Parrish simply foreclosed the lien upon the land for a debt which her husband agreed personally to pay. Under appellee's pleadings and the undisputed evidence, it was entitled to recover under its prayer for alternative relief the land itself, for the undisputed evidence shows that it had the superior title. Appellee not having recovered the land, appellant can not be heard to complain that a lien upon it for a debt for which her husband was liable was only foreclosed.

We can not perceive upon what principle of justice or reason appellant can hope to keep the land as her own without paying for it. To use the language of another member of this court, "when one undertakes to pay a debt only with law, he should tender a genuine article." We do not think that the tender of law made by appellant to appellee in this case is such a genuine article as would authorize this court to require the latter to receive it in discharge of its debt and lien.

The judgment of the District Court is affirmed.

*Affirmed.*