## WEBB'S HEIRS v. KIRBY LUMBER COMPANY.

### Decided January 16, 1908.

**1.—Republic of Mexico—Aliens—Inheritance—Trespass to Try Title.**

Under the laws of the Republic of Mexico in 1835 an heir domiciliated out of the said Republic could acquire no right by inheritance to the lands of persons dying in the province of Texas. Such heirs did not take a defeasible title, but had no title, and hence could not recover in trespass to try title against one in possession of the land.

**2.—Aliens—Act of 1840 Construed.**

The inhibition against inheritance by aliens to the Republic of Mexico was not removed by the Act of 1840. Said Act had no retroactive effect.

**3.—Appeal—Practice.**

Where, in trespass to try title, the defendant plead three special defenses, including limitation, and the court gave a general instruction to find for the defendant, without indicating upon what ground the instruction was based, it devolves upon the appellant to successfully attack every issue upon which the verdict could have been rendered, and hence a failure of the appellant to attack the action of the court on the ground that the evidence on one of the issues was insufficient to authorize the action of the court, absolves the appellate court from the duty of considering an assignment that the evidence was insufficient to authorize an instructed verdict.

**4.—Practice on Appeal—Assignment of Error.**

Under leave granted upon the submission of a case to file a written argument in answer to an argument filed by appellee, counsel for appellant filed a supplemental brief setting up for the first time a new assignment of error. Held, a violation of the rules, and a motion to strike out the supplemental brief should be sustained.

Appeal from the District Court of Angelina County. Tried below before Hon. James I. Perkins.

*W. D. Gordon* and *W. W. Blake,* for appellants.—The estate of William Webb did not eo instanti mortis escheat and vest in the Mexican government, but his alien heirs took a defeasible title subject to the right of the government to escheat it. Holliman v. Peebles, 1 Texas, 673; Yates v. Iams, 10 Texas, 168; Blythe v. Easterling, 20 Texas, 565; Hornsby v. Bacon, 20 Texas, 556; Warnell v. Finch, 15 Texas, 164.

By act of the sovereign in 1840 the title to the land in controversy was rendered incontestable for alienage by third parties, strangers to the title.

The Act of January 28, 1840, section 14 (2 Gammel, 309), provides as follows: "In making title to land by descent, it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate, is or hath been an alien; and every alien to whom any land may be devised or may descend, shall have nine years to become a citizen of the republic, and take possession of such land; or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government."

*W. J. Townsend, E. J. Mantooth* and *Terry, Cavin & Mills,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title to a league of land in Angelina County granted by the State of Coahuila and Texas to William Webb, in 1835. The appellants, who were interveners in the court below, claim the land as heirs of said William Webb. The Kirby Lumber Company disclaimed, and judgment was rendered in the court below in favor of appellee David L. Gallup and other defendants for the respective portions

.of the land in controversy claimed by them. This appeal is from the judgment in favor of defendants.

Appellees in the court below, in addition to a plea of not guilty, specially pleaded:

First. That interveners' ancestors under whom they claim were aliens to the Republic of Mexico at the time descent was cast by the death of William Webb, and therefore no title was vested in them or passed through them to interveners.

Second. That appellees held title to the land under a deed executed by the administrator of the estate of said William Webb.

They also pleaded title under the three, five and ten years statutes of limitation.

After hearing the evidence the trial court instructed the jury to return a verdict in favor of defendants and upon the return of such verdict judgment was rendered in accordance therewith.

Upon the issue presented by appellees' first special plea the agreed facts are as follows:

William Webb, the original grantee of the land in controversy, died in San Augustine County, Texas, in the year 1835, and left surviving him three sisters and the children of a deceased brother, to wit, Isom Webb, all of whom were at that time living beyond the borders of the State of Texas and Republic of Mexico, and, in fact, lived and were residents of the State of Tennessee, in the United States of America. The names of these Tennessee relatives of the said William Webb, deceased, were as follows: Elizabeth Tally, Hannah Tally and Martha Carlin, sisters of the said William Webb, who died in 1835, in Texas, and the following named nieces and nephews of said William Webb, children of said Isom Webb, a brother of said William Webb, deceased, to wit: Thomas Webb, Marena Webb, Micha D. Webb, Nancy Webb and William Webb. That the persons named as interveners in the amended plea of intervention in the above cause are the descendants and heirs of the sisters and nieces and nephews who were the only blood relations of said William Webb, the original grantee of the land in controversy, who died in 1835, in San Augustine County, Texas; that aside from these sisters and said children of his brother, Isom Webb, all of whom lived in and were residents of the State of Tennessee, in 1835, the said William Webb, the original grantee of the land in controversy, had no other relatives by affinity or consanguinity, and had no relatives who lived in Texas, so far as the evidence shows, at the date of the death of said William Webb.

Appellants' first assignment of error and the proposition thereunder are as follows:

"The court erred in holding that the interveners, although proved to be the only heirs or blood relations of William Webb, deceased, were precluded from taking title by descent, because they and those under whom they claim as heirs were aliens to the Republic of Mexico in 1835, at the date of the death of William Webb, because of the fact that they resided beyond the borders of said Republic in the State of Tennessee; and in thereupon adjudging interveners

to be without title because of said alienage, and in accordingly instructing a verdict against them."

"The estate of William Webb did not *eo instanti mortis* escheat and vest in the Mexican government, but his alien heirs took a defeasible title subject to the right of the government to escheat it."

Under the laws of the Republic of Mexico in force at the date of the death of William Webb, his heirs, who were aliens to said Republic, took no title to the lands theretofore granted him by the State of Coahuila and Texas. No title having passed to said heirs on the death of William Webb, none was transmitted through them to appellant. This is a well settled rule of property under the decisions both of the Supreme Court of this State and the Supreme Court of the United States. The rule was first announced in the case of Holliman v. Peebles, 1 Texas, 673. The same question was brought before the court in the case of Yates v. Iams, 10 Texas, 168. In the case last cited Chief Justice Hemphill, speaking for the court, says:

"But, whatever may have been the law of Spain or of the Indies, I am of opinion that, upon general principles pervading the law of 1823, under which this grant was made, and upon the general policy of the government in relation to the right of property in lands (granted for the purpose of colonization) at the time of the death of the intestate, an heir domiciliated out of the Republic of Mexico could acquire no right by inheritance to lands of persons dying in the province of Texas. That John Iams, the deceased intestate, would have forfeited this land had he abandoned the country during his life, is not now open to question. Such has always been the received construction of this law, and in · repeated instances lands thus abandoned have been regranted; and such was the opinion of this court as to the legal effect of abandonment of lands granted under this law in the case of Holliman v. Peebles.

"If the permanent absence of Iams from the country would operate of itself a forfeiture of the land, it is very clear that the domiciliation of the heir in a foreign country must have a like effect. Permanent absence in the claimant of lands was, in the law of the grant, repugnant to any property therein. It was in utter hostility to the policy of the government."

The rule as announced in this decision is recognized and enforced in each of the following cases: Hornsby v. Bacon, 20 Texas, 556; Blythe v. Easterling, 20 Texas, 565; Warnell v. Finch, 15 Texas, 164; Hardy v. De Leon, 5 Texas, 242; McGahon v. Baylor, 32 Texas, 790; Ferguson v. Johnson, 11 Texas Civ. App., 413; Middleton v. McGrew, 23 Howard (U. S.), 45.

In none of these cases is there any intimation that the rule could only be enforced in proceedings by the government for forfeiture of the land, but the broad and unqualified holding is that such alien acquired no title. Such being the law, it matters not what the right of the State in the land might be, the person in possession would be entitled to hold it against the claim of the alien heir.

Appellants further contend that under the Act of 1840 the inhibition against the right of aliens to inherit lands in this State

was removed, and the title to the land in controversy became there-
after vested in their ancestors under whom they claim. This con-
tention can not be sustained. The Act mentioned has been several
times construed by our Supreme Court and held to have no retro-
active effect and no application to cases in which descent was cast
prior to the Independence of Texas, and the adoption of the Con-
stitution of the Republic of Texas. This is the necessary construc-
tion of the Act from the language in which it is expressed, there
being nothing in the words used to indicate that it was the inten-
tion of the law makers to give it any retroactive effect. Hornsby
v. Bacon, 20 Texas, 559; Blythe v. Easterling, 20 Texas, 565.

Our conclusion being that the evidence in the case required the
trial court to instruct a verdict for defendants on the ground that
appellants failed to show any title to the land, it is unnecessary to
pass upon the questions raised by the remaining assignments which
assail the rulings of the court upon the issue of title in appellees
under the administration proceedings in the estate of William Webb,
because if any errors are shown by said assignments they could
not affect the result of this appeal.

As before stated, appellees set up three special defenses, one of
which was title by limitation. The court gave a general instruction
to return a verdict for the defendants and there is nothing in the
record to indicate upon what ground the court based said instruc-
tion, or that the same was not based upon the conclusion that all
of the defenses pleaded by appellee were established.

Upon this state of the record appellants, in order to obtain a
reversal of the judgment, were required to assail the verdict upon
every issue raised in the case upon which a verdict in favor of ap-
pellees might have been rendered.

In the brief of appellants upon which the case was submitted in
this court no assignment is presented assailing the verdict on the
ground that the evidence did not authorize the court to instruct
the jury to return a verdict for appellees upon their pleas of limi-
tation. In the absence of such assignment we can not consider the
question of the sufficiency of the evidence to authorize an instructed
verdict on that issue, and that being one of the issues in the case
upon which a verdict and judgment might have been rendered in
favor of appellees, we can not say that the court erred in instructing
a verdict in their favor. This conclusion requires an affirmance of
the judgment without regard to the other questions presented by the
brief.

Upon the submission of the cause appellants' counsel were granted
leave to file a written argument in answer to an argument by counsel
for appellees presenting the point above discussed. Acting under
this order appellants have filed a supplemental brief in which they
present for the first time an assignment assailing the verdict on
the ground that it can not be sustained on the issue of limitation.
Appellees have filed a motion to strike out this supplemental brief
on the ground that it was filed without authority of this court and
could not be filed under the rules after the submission of the cause.
This motion must be sustained. It is a substantial right of an

appellee to have his cause submitted in its regular order and to have 20 days after notice of the filing of appellant's brief within which to prepare and file an answer thereto. If after a cause is submitted an appellant is permitted to file a supplemental brief presenting additional assignments of error to those contained in the brief upon which the cause was submitted, it necessarily follows that an appellee would be deprived of one of these rights, either the submission of the case would have to be set aside or its decision delayed, or he would be deprived of an opportunity to reply to the new matter set up in the supplemental brief, and he should not be required to give up either of these rights unless good cause is shown excusing the failure of the appellant to file his brief in compliance with the rules, and no such excuse is shown in this case. Niday v. Cochran, 48 Texas Civ. App., 259.

From the conclusion above stated it follows that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.