UNDERWOOD v. HOGG et al. (No. 8435.)*

(Court of Civil Appeals of Texas. Galveston. March 8, 1924. Rehearing Denied April 3, 1924.)

**1. Appeal and error ⬯724(3)—Assignment of error held insufficient as challenging no particular action or ruling.**

Assignment of error on judgment in suit to recover land that "under the pleadings and evidence as a matter of law plaintiff was entitled to recover the land sued for," *held* insufficient under Court of Civil Appeals rules, Nos. 24, 25, 26, as challenging no particular action or ruling.

**2. Appeal and error ⬯718—Office of "assignment of error" defined.**

Office of "assignment of error" in relation to given situation is to present as applicable to it a contention which, if sustained, will entitle complaining party to relief against judgment he attacks.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignment of Error.]

**3. Appeal and error ⬯729—Assignment of error to peremptory instruction held insufficient as failing to challenge affirmative defenses.**

An assignment of error by plaintiff in suit to recover land, that the court erred in peremptorily instructing for defendants, because they "were not entitled as a matter of law to defeat prayer for recovery of the land in question, it appearing there was ample evidence of an express trust," *held* insufficient as failing to challenge sufficiency of affirmative defenses interposed, and which might have justified the peremptory instruction.

**4. Appeal and error ⬯927(7)—Special defenses not attacked on assignment for directing verdict presumed fully supported.**

Where error is assigned to a peremptory instruction for defendant in a suit to recover land, and the assignment raises no question as to the sufficiency of the pleadings or evidence to sustain special defenses interposed, it will be presumed that such defenses are fully supported.

**5. Appeal and error ⬯719(6)—When peremptory charge will not be reviewed without assignment of error stated.**

An attack on the giving of a peremptory charge for defendants as contrary to evidence of parol express trust in plaintiff's favor *held* insufficient to point out error of law apparent on the face of the record, so as to be reviewable without assignment, since examination of entire evidence would be required to determine whether the contention that a parol trust existed was sound.

**6. Pleading ⬯36(2)—Plaintiff cannot assert greater interest or higher right than pleadings seek.**

In a suit for the recovery of land alleged to have been held under a parol trust, plaintiff cannot assert a greater interest or a higher right than his pleadings seek.

**7. Deeds ⬯6—Letter held not equitable title but merely executory contract.**

In a suit to recover land as held under a parol trust, a letter by the alleged trustee to plaintiff, stating that plaintiff might acquire an interest in certain lands, for a certain sum, plaintiff being allowed a credit for services and favors shown the writer, plaintiff to write word "accepted" across letter if he agreed, *held* not to prove an equitable title to such interest nor to be a deed, but rather an executory contract, passing no title and furnishing no basis for suit for title.

**8. Vendor and purchaser ⬯93—On default under executory contract, vendor may cancel contract and sell to another.**

On default of vendee, vendor may cancel the contract, abandon the undertaking, and sell the land to another, although by the terms of the contract the making of title and payment of agreed purchase money are not dependent covenants, and deed or mortgage reserving lien for purchase money has been given.

**9. Vendor and purchaser ⬯13—Credit for past gratuitous services insufficient consideration.**

Promise to allow purchaser credit for $250 for past gratuitous services in looking after vendor's interest and for favors shown will not support land contract.

Error from District Court, Harris County; W. E. Monteith, Judge.

Action by John C. Underwood against Will C. Hogg and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, Oliver J. Todd, of Beaumont, John H. Underwood, of Columbia, and A. R. Rucks and Elmer P. Stockwell, both of Angleton, for plaintiff in error.

Carlton & Meredith, David M. Picton, Jr., Stephen L. Pinckney, C. R. Wharton, and Wm. H. Wilson, all of Houston, for defendants in error.

GRAVES, J. By a deed, absolute in form, dated August 12, 1902, filed for record October 28, 1902, John G. Bell and wife conveyed to J. S. Hogg what was thought to be 214 acres, but in fact was only 147 acres, out of what was known as the Kaiser tract in the J. H. Bell league in Brazoria county, Tex.

On January 25, 1915, John C. Underwood originally brought this suit in the district court of Brazoria county against Will, Ima, Tom, and Mike Hogg as the only heirs and legatees of J. S. Hogg, deceased, seeking to

ingraft an alleged express parol trust upon this deed from Bell and wife to J. S. Hogg in his own favor, for an undivided one-third interest in the 147 acres referred to, averring that in so purchasing the land from Bell and wife during his lifetime and pursuant to a verbal agreement between Underwood and himself to that effect, J. S. Hogg had in fact acted for both of them and had consequently taken the legal title to the whole of the 147 acres, two-thirds for himself and as trustee for Underwood to the extent of an undivided one-third thereof, specifically averring that in connection with such verbal contract and agreement between them J. S. Hogg executed and subsequently delivered to him a written memorandum thereof in the form of the following letter:

"Hogg-Swayne Company, Incorporated.

"Beaumont, Texas, September 24, 1902. "John C. Underwood, Esq., Columbia, Texas—Dear Sir: If you want it, I will let you have a one-fourth interest in the 214 acres of land I purchased from Bell and wife on 'Haiser Mound,' at sixteen dollars and fifty cents an acre—the price I agreed to pay for it in cash. This would make your part cost you (one-fourth) $882.75. Of this I shall gladly allow you a credit of two hundred and fifty dollars for looking after my interests down there and for favors shown me. The balance—six hundred and thirty-two dollars and seventy-five cents ($632.75) you can pay me at the end of 12 months to be noted in my deed to you. If this suits you, write across this letter 'accepted,' and I will make you a deed accordingly, when Bell completes his title to me or mine.

"Your friend, J. S. Hogg."

As further description of the agreement so evidenced by this letter, this averment was also made:

"It was agreed by and between plaintiff and the said J. S. Hogg that the said J. S. Hogg should take said deed in his own name, and should hold the legal title to said property in his own name *until the balance of the purchase price due by this plaintiff to cover his one-third interest in said property, should be paid*, and that he (the said J. S. Hogg) would hold the said one-third interest owned by plaintiff in said property in trust for him, and would make conveyance to him of said one-third interest in said property, *upon payment to him* of said balance of $700."

The underscoring of this quoted pleading is our own.

Subsequently the cause so filed was transferred from the district court of Brazoria county to the Sixty-First district court of Harris county, and remained without further action, as far as the records show, on the docket of the latter court until October 24, 1921, when plaintiff filed an amended pleading changing the form of the suit to the statutory one of trespass to try title, declaring himself to be the owner of an undivided one-fourth interest in the same land, and praying for title, possession, and rents.

To this pleading of plaintiff's styled his second amended original, the defendants answered with a general denial, plea of not guilty, the three, five, and ten years' statutes of land limitation, and the ten years' statute of limitation against specific performance of the contract; plaintiff in turn, by supplemental petition, denied these answering pleas of limitation and proceeded to trial upon the merits upon this second amended original petition, and after the trial had proceeded to completion, so far as the evidence of plaintiff was concerned, and he himself had testified, the defendants offered in evidence a partition deed made between Underwood and J. S. Hogg on January 4, 1904, by the terms of which they had then partitioned all land owned by them jointly in the Kaiser tract lying in the Bell and an adjoining league, under which conveyance Underwood had taken a specific tract other than the one here involved and had expressly relinquished to Hogg all claim to the particular land in controversy in this suit, as the same had theretofore been deeded to Hogg by Bell and wife.

At this juncture of the trial, and to meet the effect of the partition deed, plaintiff Underwood offered to testify to a further parol agreement between himself and J. S. Hogg at the time of, or just prior to, the execution of this partition deed, by the terms of which the title to the land that went to Hogg under the partition was also for the benefit of them both; as the pleadings stood, under objections by defendants, the trial court excluded this testimony, whereupon on the last day of the trial, October 28, 1921, plaintiff, Underwood, filed a trial amendment, by which he declared upon this additional trust agreement between himself and J. S. Hogg, and, among other things, specifically alleged in reference to it as follows:

"They agreed that the legal title to be so taken by said Hogg in said partition deed as and for the lands set forth as the Bell interests, as same is described in the foregoing contract, should and would be taken by J. S. Hogg under the same trusts, conditions, and provisions as the said J. S. Hogg had theretofore held said interest in common under the terms of the written contract above mentioned, and that, acting and relying upon the said agreement and promise of said J. S. Hogg and upon the trusts aforesaid, the said John C. Underwood joined in said partition deed, aforesaid, and by the terms of which agreement said legal title was then and there taken, vested, and continued in said J. S. Hogg, according to the terms, provisions, and conditions of the said written contract of September 24, 1902, and in trust for this plaintiff, as aforesaid."

After their objections to the filing of the trial amendment in the circumstances had been overruled, the defendants replied to it by a further supplemental answer which contained exceptions, a renewal of all their former pleas, general demurrer, and denial,

the two, four, five, and ten years' statutes of limitation, and a reiteration of their preceding pleas concerning adverse possession, further declaring that plaintiff, Underwood, had abandoned his claims, and in addition sued in cross-action for all of the defendants individually and on the part of Will C. and Ima Hogg, as executors of J. S. Hogg, deceased, praying for title for themselves, as well for removal of any cloud cast by plaintiff's claims, and for general relief.

The trial court, after permitting plaintiff, Underwood, to testify to this additional trust agreement as being had between himself and J. S. Hogg substantially as alleged by him in the quoted portion of his trial amendment, then granted a motion duly made by defendants for a peremptory instruction in their favor. The jury having returned the directed verdict, judgment in favor of defendants followed, and plaintiff Underwood duly presents this appeal therefrom.

Plaintiff in error presents in this court only two assignments of error, which are as follows:

"(1) Under the pleadings and evidence as a matter of law, plaintiff was entitled to recover the land sued for.

"(2) The court erred in peremptorily instructing the jury to return a verdict for the defendants because, in any event, the defendants were not entitled, as a matter of law, to defeat the prayer for recovery of the land in question; it appearing there was ample evidence of an express trust, though resting in parol, upon which plaintiff had a right to rest his title."

At the outset defendants in error object to this court's considering either of these assignments, on the ground that both are too general and specify no distinct error, as required by rules 24, 25, and 26 for the Courts of Civil Appeals, and further, that No. 2, "even if true, does not remotely challenge the sufficiency of defendants' affirmative defenses upon which the court may have properly based a peremptory instruction."

We think the objections are fully supported by these authorities, cited by defendants in error under them: Mortimore v. Affleck (Tex. Civ. App.) 125 S. W. 52; I. & G. N. v. Branch (Tex. Civ. App.) 56 S. W. 542; Stein v. Roberts (Tex. Civ. App.) 217 S. W. 167; Sample v. Drake (Tex. Civ. App.) 224 S. W. 555; Crowley v. Finch (Tex. Civ. App.) 153 S. W. 648; Webb's Heirs v. Kirby Lumber Co., 48 Tex. Civ. App. 543, 107 S. W. 581–583; Gunther v. Lillard, 1 Tex. Civ. App. 325, 21 S. W. 118, 119; Land Co. v. Chisholm, 71 Tex. 523–528, 9 S. W. 479; Logan v. Lennix, 40 Tex. Civ. App. 62, 88 S. W. 364; Mahon v. Kinney County (Tex. Civ. App.) 28 S. W. 1024; Liner v. Watkins Land Mtg. Co., 29 Tex. Civ. App. 187, 68 S. W. 311–314; Houston Oil Co. v. Kimball, 103 Tex. 103, 122 S. W. 533, 124 S. W. 85; Westheimer v. Piner (Tex. Civ. App.) 240 S. W. 986; Conn v. Houston Oil Co. (Tex. Civ. App.) 171 S. W. 523; Walker v. T. & N. O. Ry. Co., 51 Tex. Civ. App. 391, 112 S. W. 430.

[1, 2] Obviously the first assignment challenges no particular action or ruling, and consequently, under what has always been the construction of the rules invoked, presents no issue for this court to pass upon. When analyzed a little, under an attempt to apply it to the situation developed on the trial, the second one is little, if any, more distinct or concrete; at most it amounts to saying, "It appearing there was ample evidence of an express parol trust, defendants were not entitled as a matter of law to an instructed verdict." The office of an assignment of error in relation to a given situation is to present as applicable to it "a contention which, if sustained, will entitle the party complaining to relief as against the judgment he attacks." Mortimore v. Affleck (Tex. Civ. App.) 125 S. W. 52; Webb's Heirs v. Kirby, 48 Tex. Civ. App. 543, 107 S. W. 581–583 (writ of error denied), both supra. The particular situation inhering in the ruling here sought to have reviewed was that defendants in error had both fully pleaded and introduced much evidence to substantiate several affirmative defenses against plaintiff in error's claim—that is, (1) limitation under the three, five, and ten years' statutes against it as an effort to recover land, as well as the two, four, and ten years' statutes against it as an action to enforce a contract; (2) that he had expressly relinquished it to J. S. Hogg in and was therefore cut off by the partition deed between them of January 11, 1904; (3) that he had, through an extended course of dealing, abandoned the claim, and had so in writing acknowledged on March 2, 1906; (4) that in the interval between the alleged inception of the title or right he sued upon plaintiff in error had gone into bankruptcy and his trustee, not a party to this suit, thereby became invested with such interest, if any, as may have accrued to him out of the transaction he declared upon.

[3] This assignment neither refers to nor even inferentially challenges the sufficiency of any one of these outstanding defenses; there is no indication in the record as to what the trial court grounded the peremptory instruction upon, certainly no intimation that it may not have rested it on a finding that one or more of these answering matters had been fully established; a claim for error so couched and drawn, when offered for application to such a situation as this, could therefore at best amount to only half the battle, or, as was said by the court in Mortimore v. Affleck, supra, "might be sustained, and the judgment nevertheless be affirmed."

[4] There being thus no question raised as to the sufficiency of the pleadings or evidence to sustain any one of the special defenses

so interposed, it will be presumed on appeal that they were fully supported. Webb's Heirs v. Kirby, 48 Tex. Civ. App. 543, 107 S. W. at page 583, Crowley v. Finch (Tex. Civ. App.) 153 S. W. 648; Mahon v. Kinney County (Tex. Civ. App.) 28 S. W. 1025, 1026.

[5] Neither could this attack upon the giving of the peremptory charge here, under well-settled holdings of our courts, be said to point to such an "error of law, apparent on the face of the record" as would be reviewable without an assignment, because plainly an examination of the entire evidence affecting the matter would be required to determine whether or not the contention that a parol trust existed was sound. It would not therefore be fundamental. Webb's Heirs v. Kirby; Conn v. Houston Oil Co.; Walker v. Ry. Co., supra; Ry. Co. v. Wheat (Tex. Civ. App.) 173 S. W. 977; Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979—all of which had to do with the giving of a peremptory instruction. See, also, to the same effect Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Westheimer Co. v. Piner (Tex. Civ. App.) 240 S. W. 986. Accordingly, neither of the assignments is entitled to be considered.

If, however, it could be said that this conclusion is erroneous, and that the claim for the establishment of an equitable title to a one-fourth interest in the land—as evidenced by the letter of J. S. Hogg to plaintiff in error of date September 24, 1902—should be passed upon, this court would be compelled to hold that no such right was established. There are several considerations from which this view clearly follows, we think.

[6] In the first place, while plaintiff in error originally sought to deraign title from oral agreement to jointly buy the land from the Bells between himself and Hogg, antedating and independent of this letter, he not only made out no such case upon the trial, but both by his pleadings and his proof brought his cause of action down to one grounded entirely upon this letter (or "written contract," as he himself therein terms it), and a verbal agreement to make the partition of January 11, 1904, "under the same trusts, conditions, and provisions," expressly and affimatively declared upon in the foregoing quotation from his trial amendment. It goes without saying that in no event can he assert a greater interest or a higher right than his pleadings sought, and a recurrence to those excerpts from them above copied demonstrates the correctness of the statement just made. In the trial amendment referred to, and preceding the quotation herein made from it, he averred that prior to the deed from the Bells to Hogg and to the 24th of September, 1902, he and Hogg had jointly agreed to buy the land in the proportions of one-fourth and three-fourths, respectively, that thereafter it was, under such agreement, acquired from Bell and wife by the deed to Hogg alone, and that subsequently on the date of it—September 24, 1902—"J. S. Hogg made, executed, and delivered a certain instrument in writing of a contract, the terms of which are as follows," setting out the letter in full; then the amendment contains this allegation, "that the said John C. Underwood at or about the time of the execution and delivery of said letter indorsed thereon the word 'Accepted,' signing his name thereon." It concludes with the declaration of the same agreement and understanding as being later carried on into the partition deed, the gist of which appears in the final paragraph we have referred to as being copied from it.

So much for the effect of the pleadings. When the evidence is looked to, the same condition appears. The statement of facts discloses that after plaintiff in error had first stated on direct examination that, prior to the execution of the letter of September 24, 1902, he had had a verbal agreement with Gov. Hogg "to have or to take a one-fourth interest in the property at the price it cost." On cross-examination he admitted that the letter was not only the sole agreement in writing he had with Gov. Hogg, but that, it followed up and reduced to writing, "what I had had as a parol or verbal understanding with him before that time." Thereupon, an objection made to his testimony as to the prior verbal agreement, because the instrument itself, the letter, was the best evidence, was sustained, and it passed out of the record. This left no evidence as to any prior parol agreement.

The original letter was in evidence, and, as the last-copied recitation from plaintiff in error's pleadings charges, was shown to have been about the time of its receipt indorsed "Accepted" and signed by him.

It thus finally results that by both pleading and proof plaintiff in error's rights are referable to and wholly dependent upon what should be held to be the legal effect of this letter of J. S. Hogg to him of September 24, 1902, and a like verbal understanding "under the same trusts, conditions, and provisions" carried into the partition deed between them of January 11, 1904.

[7] So regarding the reaches of the case as made by him, we cannot agree with plaintiff in error in this pronouncement upon it:

"The letter of September 24, 1902, with the written acceptance of Underwood thereon, coupled with the deed from Bell and wife to J. S. Hogg, filed for record October 28, 1902, proved an equitable title to one-fourth of such purchase in Underwood, and three-fourths in Hogg, with the legal title in J. S. Hogg."

Rather do we conclude that the letter neither constituted an equitable title nor a deed, "but at best only an executory contract, passing no title and furnishing no basis for a suit for title," and that nothing was added

to it by ingrafting the same thing on the subsequent partition deed.

At first blush the recitation in the letter, "I will make you a deed accordingly, when Bell completes his title to me or mine," might indicate that it was then the writer's purpose to make a deed to Underwood whenever Bell should complete his title to him, without reference to whether or not the balance of $632.75 had by that time been paid him, but practically contemporaneous, as well as subsequent, events and acts of both parties, concerning all of which the evidence is without dispute, unmistakably show that such was not the mutual understanding or intention. Hogg did not make a deed to Underwood on the conveyance to him from Bell, although he may have received the Bell deed about the same date he wrote the letter to Underwood, since it bears date more than a month prior, August 12, not being recorded, however, until a month after, that is, October 28, so the exact date of the completion of the Bell title into him does not appear; neither did Underwood ever at any time demand of Hogg that a deed be executed and delivered to him without payment of the money, but, on the contrary, at all times, and up until as late as January 25, 1915, when he filed his original petition in this suit and so therein alleged, as the copied paragraph therefrom appearing on the second page of this opinion discloses, he recognized that he was not entitled to a deed from Hogg "until the balance of the purchase price due by this plaintiff to cover his one-third interest in said property should be paid"; the same mutual interpretation of the writing is further evidenced by two written extensions of the contract for one year each, indorsed by the parties on the original letter on October 26, 1903, and September 12, 1904, respectively, in terms as follows:

"Austin, Texas, October 26, 1903.

"This agreement on the part of J. S. Hogg to sell John C. Underwood an one-fourth interest in and to the 214 acres of the Kaiser place purchased from Bell and wife, said one-fourth to be paid by Underwood within twelve months from the date of this letter offering him the land, was accepted by said Underwood but he having failed to pay the $632.75 due by him within the time stipulated, it is hereby noted, acknowledged and agreed that he, the said Underwood, shall have an extension of time of one year within which to pay the money due on the land (within named) by him, making said Underwood's part due on or before September 24, 1904."

"Sept. 12, 1904.

"This agreement 'is extended so far as payment is concerned until one year from date of Sept. 24, 1904."

The contexts of these instruments plainly indicate, it seems to us, that the original letter was meant to be, not in effect the equivalent of an actual deed to an interest in the property in presenti, but a mere contract to thereafter sell or convey an interest to plaintiff in error, if and when he paid the balance of the purchase price. Hogg had long since received his title from Bell and wife, which fact Underwood well knew, and so knowing had accepted these written extensions—which, apparently from their terms, were meaningless, if any deed was to be made by Hogg before payment of the money—and must be held to be bound by them; that he not only considered himself in fact bound by them, but also upon his own part put at the time the same construction we have upon them appears to be made certain by the further fact, that, having still failed to pay this consideration on the expiration of the last extension, that is, by September 24, 1905, he wrote Gov. Hogg on March 2, 1906, saying in substance:

"I am fully aware that I have no legal claims on you. * * * I did forfeit my legal claims for this property on September last."

Plaintiff in error paid nothing for either of these extensions, and never paid or tendered the balance of the agreed purchase price for the interest he sought to recover up to the filing of his suit; neither has he made a legal tender of the amount into court. No further extensions were made, and some time after the failure to meet the last one, J. S. Hogg's representatives finally repudiated all obligation in the matter.

One of the most familiar and useful rules employed by the courts in arriving at the meaning of contracts is to look to the acts of the parties themselves under them as indicative of their mutual intention; if that test be applied under the facts obtaining here, there would seem to be no doubt that only an executory agreement was intended. And if the truth and effect of the transaction be the mere creation of a contract of that nature, since undisputedly it was never carried out on either side, no title to land passed under it and no suit in trespass to try title therefor would lie; Peterson v. McCauley (Tex. Civ. App.) 25 S. W. 828; Wallace v. Wilcox, 27 Tex. 60–67; Secrest v. Jones, 21 Tex. 121–132; Secrest v. Jones, 30 Tex. 597–603; Vardeman v. Lawson, 17 Tex. 15, 16; Pruiecke v. Ramzinski (Tex. Civ. App.) 81 S. W. 771, 772; Glasscock v. Nelson, 26 Tex. 150–152; Bell v. Warren, 39 Tex. 106–110; Masterson v. Pullen (Tex. Civ. App.) 207 S. W. 537, 538; Slaughter v. Coke County, 34 Tex. Civ. App. 598, 79 S. W. 863–865.

[8] In such circumstances, or even in those exhibiting a stronger right—as where a deed or mortgage reserving a lien for unpaid purchase money has been given—it seems to be further well settled that, on default of the promisor or vendee, the other party may cancel the contract, abandon the undertaking, and sell the land to another, although by the terms of the contract the making of title and the payment of the agreed purchase money

are not dependent covenants. Secrest v. Jones, 21 Tex. 132; Dunlap v. Wright, 11 Tex. 604, 62 Am. Dec. 506; Browning v. Estes, 3 Tex. 475, 49 Am. Dec. 760; Thompson v. Westbrook, 56 Tex. 265–267; Evans v. Ashe, 50 Tex. Civ. App. 54, 108 S. W. 398–401, 1191; Graham v. West (Tex. Civ. App.) 26 S. W. 920–921; Lanier v. Foust & Douglass, 81 Tex. 190, 16 S. W. 994.

[9] In this connection it is also to be noted that plaintiff in error in the first instance had not paid Hogg any part of the consideration on any contract of purchase. He expressly testifies that he did not, saying that that he "never charged Hogg a cent for anything I had done in my life." So the statement of Hogg in the letter with reference to the $882.75—"of this I shall gladly allow you a credit of two hundred and fifty dollars for looking after my interest down there and for favors shown me" must be regarded as only an admitted gratuity resting on past services, and hence of itself could furnish the basis of no enforceable right. Austin City R. R. v. Swisher, 1 White & W. Civ. Cas. Ct. App. § 75.

From these conclusions it follows that the judgment of the trial court should be affirmed, regardless of other questions presented by either side in the briefs filed in this court. For that reason it is deemed unnecessary to discuss them. An affirmance has been ordered.

Affirmed.