**In re Mark K. ONLEY and Anna L. Onley, Debtors.**

**The FIRST STATE BANK OF SHALLOWATER, Plaintiff,**

**v.**

**Mark K. ONLEY, Anna L. Onley, Carol Hale, Internal Revenue Service, United States of America, United States Trustee and Myrtle McDonald, Trustee, Defendants.**

**Bankruptcy No. 58450001.**
**Adv. No. 584–5106.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Feb. 28, 1985.

James Bowman, Lubbock, Tex., for plaintiff.

Myrtle McDonald, Lubbock, Tex., Trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The First State Bank of Shallowater ("Bank") filed complaint to determine the validity, priority and extent of liens against the proceeds of sale of a residence once owned by the debtors, Mark K. Onley and Anna L. Onley ("Onley"). Myrtle McDonald ("Trustee") contended that the bank had not perfected a lien. The following summary constitutes findings of fact and conclusions of law.

At all relevant times prior to February 1, 1982, the debtors owned a residence located on Lot 706 Broadmoor Addition to the City of Lubbock, Texas. On February 1, 1982, they entered into a lease agreement with purchase option with Carol Hale, whereby Hale leased the premises for a period of 150 months commencing March 1, 1982, at the rate of $729.20 per month (with provisions for increase in event of tax or insurance increases). Additionally the agreement provided Hale with an option to purchase the premises at any time prior to the expiration of the lease for the purchase price of $64,950.00 with all lease payments to apply towards the purchase price. Hale paid to the debtors the sum of $17,000.00 in cash. The lease agreement recited that the payment of that sum of money represented payment for the option.

Hale moved into the residence prior to March 1, 1982, and since that date she has occupied those premises. In October 1984, she formally exercised the option, and, after notice to parties in interest, she assumed the balance on some existing liens, she paid the difference between the total purchase price and the assumed liens to the trustee, and the property was deeded to her by the trustee.

After the lease agreement had been executed with Hale, Onley borrowed $24,000.00 [1] from the bank on April 15, 1982, evidenced by a note in that amount dated that date which recited that the note was secured by a deed of trust lien and assignment of, and security interest in, the above mentioned lease agreement. The deed of trust was timely recorded in the Office of the County Clerk of Lubbock County, Texas, and a financing statement, listing "assignment of contract rights under lease agreement covering Lot 706, Broadmoor, an addition to the City of Lubbock, Lubbock County, Texas" as collateral was recorded in the Office of the County Clerk. The security agreement which was evidenced by the financing statement was entitled "lease and rental assignment and security agreement" and purported to assign to the bank "a security interest in the following described lease agreement and all renewals and extensions thereof, and any and all other lease agreements which may hereafter be executed covering all or any of the property described below, together with all rentals and income accruing therefrom." The referenced description

1. The proof of claim filed by the bank reflects $19,354.29 in principal owing on the note.

was that of Lot 706 in Broadmoor Addition to the City of Lubbock.

The debtors filed petition for order for relief under Chapter 7 of Title 11, United States Code on January 3, 1984. Myrtle McDonald qualified as trustee of the debtors' estate and since that date she has acted in that capacity. Among her actions she has completed the closing of the transaction with Carol Hale and has deposited the monies in the estate account, awaiting the outcome of this litigation.

Internal Revenue Service also has a claim in this case. On December 21, 1983, it filed "Notice of Federal Tax Lien Under Internal Revenue Laws" in the Tax Lien Records of Lubbock County, Texas, evidencing a secured tax claim in the amount of $19,133.06. Thereafter on December 29, 1983, a second tax lien in the amount of $766.56 was filed by Internal Revenue Service. No party has challenged the validity of the tax liens and if the trustee prevails in her challenges to the validity of the bank's claim of lien the IRS liens will be promoted to first priority in payment of the sales proceeds of the residence, with the balance remaining in the estate account for distribution under the scheme set out in the Bankruptcy Code. However, if the bank's claim of security interest is upheld that claim will enjoy first priority in payment.

█ The bank's claim of security interest is premised on both the deed of trust filing and the UCC filing in the Office of the County Clerk. I have concluded that the claim of security interest based on the "lease and rental assignment and security agreement" is defective for at least two reasons. First, state law is quite clear that the instrument does not perfect a lien against rentals. *See Taylor v. Brennan,* 621 S.W.2d 592, 593–4, (Tex.1981) where the Texas Supreme Court noted:

"Texas follows the lien theory of mortgages. Under this theory mortgagee is not the owner of the property and is not entitled to its possession, rentals or profits. Thus, it has become a common practice to include in the deed of trust, or in a separate instrument, terms assigning to the mortgagee the mortgagor's interest in all rents falling due after the date of the mortgage as additional security for payment of the mortgage debt. The Texas cases addressing rentals assigned as security have followed the common law rule that an assignment of rentals does not become operative until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action." (Citations omitted).

In this case the bank had not taken possession of the property at any time relevant to these proceedings nor had it taken any other overt action which might entitle it to receive rents and lease payments.

Further, the bank had not filed a financing statement with the Secretary of State of Texas and thus cannot be deemed to have perfected a security interest against general intangibles. If the bank is to prevail it must be on the fact that it obtained, and timely filed, a deed of trust against the premises.

█ If the transaction with Carol Hale had been a straight lease transaction without any provisions for purchase option I would have little trouble in finding that the debtors retained both legal and equitable title and interest to those premises, that at the time of the loan from the bank the property was not the debtors' homestead, and that the bank, by filing the deed of trust, had perfected a deed of trust lien against the premises. However, although the instrument was entitled "lease agreement" and contained a "purchase option" I find that from its inception the transaction with Carol Hale was in the nature of an executory contract for the purchase and sale of those premises. The fact that Hale and the debtors selected the "lease with purchase option" procedure instead of making an outright conveyance from the debtors to Hale in February 1982 gives me little pause. The sometimes unrealistic attitude taken by lending companies with liens against real estate ... particularly where

single women are prospective purchasers ... often results in sellers and purchasers devising bizarre schemes to accomplish a transfer of property without a contemporaneous acceleration of note or prohibitive increase in interest rates by the mortgage company. Here, Hale paid $17,000.00 for a "purchase option" ... a payment which represents an unreasonable amount for a mere option to purchase residential real estate valued at no more than $65,000.00. In my opinion the only rational finding is that on February 1, 1982, both the debtors and Carol Hale knew and intended that Hale was purchasing the property and the debtors were selling that property. Further, I find that the bank, when it made the loan to the debtors in April 1982, knew that Hale was residing on the property and that she had the purchase option. In fact, I find that the cognizant bank officials were fully aware that Hale was purchasing the property from the debtors.

The issue [2] then becomes the nature of the interest retained by the sellers, the debtors. Was it a real property interest which can be encumbered by a deed of trust or was it a personal property interest which requires perfection under article 9?

There were three schools of thought in Texas as to what a vendee receives upon entry into an executory contract for sale. One old view was that the vendee receives an equitable lien. *See* e.g. *Ross v. Haynes,* 196 S.W. 364 (Tex.Civ.App.—Fort Worth 1917, writ ref'd.). However, that view has found little or no acceptance in more recent cases.

A second school of thought was that the vendee acquires equitable *title* to the land. However, the great weight of authority in Texas favors a third concept—that a vendee under a contract for the sale of real property obtains an "equitable interest" upon entering into the contract. The proposition was plainly stated by the Court in *Atkins v. Carson,* 467 S.W.2d 495, 500

(Tex.Civ.App.—San Antonio 1971, writ ref'd. n.r.e.) as follows:

"Perhaps the majority of American jurisdictions hold that a purchaser acquires an equitable title to land immediately on entering into a valid executory contract of sale.... But at an early date our supreme court made a distinction between an equitable title and an equitable right with regard to land contracts holding that so long as the purchase price remained unpaid the purchaser has only an equitable right.... The purchaser obtains equitable title only when he has fully performed under the contract."

■ An equitable *right* passes to the vendee on entry into a contract for the sale of land. *Johnson v. Wood,* 138 Tex. 106, 157 S.W.2d 146 (1941). After payment of the full purchase price, a vendee receives equitable *title* that is superior to the vendor's legal title. *Magee v. Young,* 145 Tex. 485, 198 S.W.2d 883, 886 (1946).

■ Therefore, the present status of the rule in Texas may be simply stated. Equitable title passes at the same time that legal title *ought* to pass, but it passes by operation of law. Title will pass without the vendor taking any action. Performance by the vendee which is refused by the vendor cannot stop passage of equitable title.

■ Applying those legal concepts to this adversary proceeding it is apparent that the debtors reserved both legal title and equitable title when they entered the executory contract of sale with Carol Hale, with an equitable "interest" passing to Carol Hale. A precise definition of that "equitable interest" is elusive and obscure. However, one aspect of that "equitable interest" is the right to performance. The debtors had reserved legal and equitable title which could properly be encumbered by the bank's subsequent deed of trust.

---

2. The contention advanced by the trustee that the property was the homestead of Carol Hale and that, by virtue of the Texas constitution, the bank could not obtain a lien against the property is rejected without much discussion. No lien is claimed by the bank against any interest acquired by Carol Hale. The bank seeks only to encumber the interest, if any, retained by the debtors.

 

However, Carol Hale had the right to receive equitable title, free and clear of the subsequent encumbrance of the bank, after she had fully performed.

I conclude, therefore, that the bank had properly perfected a deed of trust lien against the proceeds of sale to protect its principal indebtedness of $19,354.29, together with contractual interest. However, the proof of claim alleging entitlement to $1,935.43 in attorney's fees (ten percent of the principal balance) properly may not be recovered from those proceeds of sale. If the bank is in fact oversecured it is entitled to reasonable attorney's fees, but the amount of those attorney's fees must be determined within the guidelines of *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974) and its progeny. That issue should be raised by separate application, containing the itemized chronological statement contemplated by those cases.

It is, therefore, ORDERED by the Court that First State Bank of Shallowater do have and recover of and from the trustee, Myrtle McDonald, from proceeds of sale of Lot 706, Broadmoor Addition to the City of Lubbock, Texas, the sum of $19,354.29, with interest at the contractual rate.

LET JUDGMENT BE ENTERED ACCORDINGLY.