In re The CHARTER COMPANY, et al., Debtors.

HORIZON PROCESSING COMPANY, Plaintiff,

v.

CHARTER INTERNATIONAL OIL COMPANY, Defendant.

Bankruptcy Nos. 84–289–BK–J–GP to 84–332–BK–J–GP.

Adv. No. 84–199.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 21, 1985.

**514**

Karen S. Jennemann, Jacksonville, Fla., for Charter International Oil Company.

Alan M. Weiss, Jacksonville, Fla., E.H. Patton, Jr., for Horizon Processing Company.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court on the plaintiff's motion for partial summary judgment and the defendant's motion for summary judgment on its counterclaim. Arguments were heard on February 8, 1985, and memoranda of law were then submitted by both parties. On April 5, 1985, the Court ordered the parties to supplement the record with certain affidavits and gave leave to file supplemental briefs; both sides submitted such briefs.

The plaintiff maintains that it is entitled to return of or the proceeds of products allegedly converted by the defendant. The defendant had possession of the goods because it was in the business of refining crude oil into gasoline and had performed that service for the plaintiff. Throughout the effective time of the processing agreement certain refined products, which by agreement the plaintiff was entitled to demand at any time and which the plaintiff unquestionably owned prior to entry into negotiations with the defendant to sell the products to the defendant, remained in the defendant's storage facilities. According to the complaint, the products in question have an aggregate reasonable value of at least $199,649.94. The plaintiff alleges that it demanded return of the product or a reasonable accounting following the defendant's bankruptcy petition but that those demands were refused. The plaintiff asks, in addition to the return of the products or their reasonable value, interest, costs, and punitive damages for willful and malicious conduct. The defendant argues that, after entry by the parties into a sales

agreement providing for the defendant to purchase the product from the plaintiff, the plaintiff retained only a security interest in the product. The plaintiff's counter-claim seeks to invalidate that security interest. This proceeding is governed by application of the Bankruptcy Code and by provisions of Article II (Sales) of the Texas Uniform Commercial Code (U.C.C.). The facts are not disputed.

The plaintiff does not argue that it is entitled to reclaim goods under applicable bankruptcy and state law. Instead, the plaintiff maintains that defendant has no right to exercise dominion over the goods in question, because it had acquired no title or legal interest but was and is merely a bailee.

We disagree and find that the essentially uncontested facts, together with applicable law, lead us to the conclusion that the plaintiff is not entitled to any remedy for conversion but is not more than an unsecured creditor.

The facts may be summarized as follows:

On May 11, 1982, the parties entered into a written agreement under which the plaintiff would deliver crude oil to the defendant for processing, and the finished product would be returned to the plaintiff. It is uncontested that under that agreement no ownership rights were granted to the defendant. The plaintiff was, under the terms of the agreement, entitled to delivery on demand of the finished product. The defendant retained possession in its storage facilities some finished product. As it became known that the defendant and affiliated companies were in financial difficulty, the parties negotiated an oral agreement whereby the plaintiff agreed to sell, and the defendant to purchase, the finished product owned by the plaintiff and in the defendant's custody. The oral agreement was memorialized in a letter from R.N. Thacker, Vice President of the plaintiff corporation, to Aline Tedder, an employee of the debtor corporation, dated April 17, 1984. The letter specified that "[I]t has been mutually agreed that Horizon would sell these products to Charter as a method for clearing out the balance. The sale would be as an in-tank transfer, with title to pass from Horizon to Charter at the time Horizon receives payment from Charter." It is uncontested that the letter accurately reflects the agreement of the parties. The defendant with affiliated corporations filed for bankruptcy protection on April 20, 1984, and has not paid for, returned, or accounted for the product.

The fact situation and issues raised by the parties prompt a mixed question of fact and law, i.e. whether a sale took place. If in fact a sale took place, then reservation of title is limited in effect to retention of a security interest: section 2.401 of the Texas Uniform Commercial Code provides in pertinent part that "[A]ny retention or reservation of title by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Section 1.201(37), a definitional section, provides in pertinent part that [T]he retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to reservation of a 'security interest.' "

■ The plaintiff argues that by explicit agreement respecting passage of title, the parties changed the time of sale from when it would otherwise be, i.e. at delivery, to the time when payment was received. As § 2.401(c) of the U.C.C. makes clear, the parties may indeed explicitly agree to the time of passage of title, *Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003 (1982), but we do not believe that this power on the part of the parties, which was in fact exercised in this instance, affects the limitation on the effect of retention of title notwithstanding delivery. The Court must conclude that the parties by agreement did indeed keep title from passing to the defendant but for purposes of the issues before the Court, it does not matter. Under the Uniform Commercial Code, passage of title and consummation of sale are two separate concepts, and the latter is not dependent on the former. This is not to say that the plaintiff is without arguable

statutory support. The plaintiff correctly reports that according to U.C.C. 2.106(a), "A 'sale' consists in the passing of title from the seller to the buyer for a price." In view of the fact, however, that this definitional section is subject to the limitation of § 2.401, we must conclude that its language is intended to set forth the boundaries of what *kind* (underlining for emphasis) of transaction may constitute a sale, rather than to pinpoint when a sale takes place. It appears to the Court that the plaintiff's position on this issue is contrary to well established Uniform Commercial Code policy, as elucidated by Judge Godbold in *Matter of Samuels and Co., Inc.*, 526 F.2d 1238 (5th Cir., 1976), cert. denied 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99:

> Prior to the enactment of the Uniform Commercial Code, seller and buyer could agree that, despite buyer's possession, title to goods sold was to remain in the seller until he was paid. Such a reservation of title under the "cash sale" doctrine would defeat not only a claim to the goods by the defaulting buyer but also the claims of lien creditors of the buyer, for the buyer's naked possession could give rise to no interest to which a lien could attach.
>
> However, the U.C.C. specifically limits the seller's ability to reserve title once he has voluntarily surrendered possession to the buyer: 'Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. § 2.401(a). See also § 1.201(37). The drafters noted the theory behind this provision: Article [Two] deals with issues between seller and buyer in terms of step-by-step performance or non-performance under the contract for sale and not in terms of whether "title" to goods has passed.' § 2.401, Comment 1.

This is binding precedent and we believe it to be a correct statement of law and governing in this case.

■ Prior to the submission of the supplemental affidavits and briefs of the parties, the Court had felt some concern over delivery or shipment within the meaning of U.C.C. 2.401 and 1.201(37) had taken place. Specifically, the letter from Mr. Thacker to Ms. Tedder alluded to *supra* provides that "delivery shall be by in-tank transfer," and the Court wished to assure itself that it understood what was meant by in-tank transfer and that that event had in fact occurred. The defendant maintains its position that delivery was instantaneous upon the making of the contract, by operation of law because the goods were already in the defendant's physical possession. The defendant cites a number of pre-U.C.C. cases which support its position, in the absence of a directly applicable provision of the U.C.C. Section 2.401(c)(2) provides that "[U]nless otherwise explicitly agreed where delivery is to be made without moving the goods, if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting." This provision is not directly on point of our immediate problem, although it may give inferential support to the defendant's position. Clearly, the parties *did* agree otherwise as to the passage of title, and we are attempting to resolve the issue of delivery. We are satisfied that the U.C.C. does not expressly address the issue of delivery in the event that the goods are already in possession of the buyer. In this instance, there was an explicit agreement as to *how* delivery would take place, i.e. by in-tank transfer, and we must inquire as to whether it was also an agreement as to *when* delivery would take place. We have concluded that it is not. Because the effect of retention of title is limited to retention of a security interest only when the goods in question are already delivered, the time of delivery is material. According to the affidavit of R.R. Rothwell, Jr., president of the plaintiff corporation,

> Pursuant to the proposed sale of that remaining finished product as set forth in the proposal dated April 17, 1984, it was agreed that if CIOC purchased that

remaining finished product, it would be 'transferred' by 'in-tank transfer.' An in-tank transfer does not require any physical movement of the product but is merely a bookkeeping entry made by CIOC. Whether the various finished products are moved from one tank to another by CIOC is something over which Horizon has no control or any knowledge. There was no delivery by Horizon to CIOC of the finished products. It was not the intent of Horizon to consent to any type of delivery of its products to or by CIOC until CIOC had consummated the purchase of the finished product by making payment therefor as set out in the April 17, 1984, documents.

From this affidavit we learn that the plaintiff had no part to play in the contemplated in-tank transfer but that the process was entirely under the defendant's control. We must conclude that the parties did not agree that delivery would take place at a time other than at the time and place of contracting, because the plaintiff did not assert or maintain control over the delivery process; perhaps it could not have done so. Retention of title was indeed "notwithstanding shipment or delivery," and therefore limited in effect to retention of a security interest. Summary judgment for plaintiff is denied.

■ Having determined that the plaintiff has no more than a security interest in the products, we move to motion for summary judgment on the defendant's counterclaim for determination of the validity, priority, and extent of the plaintiff's lien. The record contains no evidence of any attempt on the part of the plaintiff to perfect its security interest nor does it allege any perfection. Title 11, U.S.C., § 544 gives the trustee the rights and powers of the ideally situated hypothetical lien creditor, which enables the trustee to avoid the fixing of unperfected security interests. Title 11, U.S.C., § 1107 vests in the debtor in possession the rights and powers of a trustee. Thus by operation of statute, the defendant's counterclaim must result in a finding

that the security interest created by retention of title may be avoided by the debtor in possession, and plaintiff's interest is that of an unsecured creditor in the amount of the value of the product retained by the defendant. Summary judgment is granted on defendant's counterclaim.

It is, therefore,

ORDERED as follows:

1. Plaintiff's motion for partial summary judgment is denied;

2. Defendant's motion for summary judgment on counterclaim is granted.