In re Elton Randal HARTMAN and Beverly M. Hartman, d/b/a Hartman Water Well Service, Hartman Farms and H.C.R. Gas Company, Debtors.

Bankruptcy No. 688–60209–12.

United States Bankruptcy Court,
N.D. Texas,
San Angelo Division.

July 24, 1989.

Walter W. Pfluger, Shannon, Porter, Johnson & Pfluger, San Angelo, Tex., for creditor.

Samuel S. Allen, Smith, Carter, Rose, Finley & Hofmann, San Angelo, Tex., for debtor.

Walter O'Cheskey, Lubbock, Tex., Chapter 12 trustee.

## MEMORANDUM OF OPINION ON VALIDITY OF A CONTRACT OF SALE LIEN

JOHN C. AKARD, Bankruptcy Judge.

Elton Randal Hartman and Beverly M. Hartman (Debtors) filed a Motion to Assume Unexpired Leases. Rod Richardson (Richardson) filed an Objection to Debtors' Motion to Assume Unexpired Leases and Motion to Compel Debtors to Assume or Reject Executory Contract. The issue before the Court is the validity of a security interest created in a contract of sale for personalty and real estate leases.

### FACTS

On December 16, 1982, Richardson and the Debtors entered into a Contract of Sale and Escrow (Contract) effective July 15, 1982. The Contract called for Richardson to sell the Debtors the following property in Pecos County, Texas:

(A) All that certain personal property and equipment valued at TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00), more fully described in a Bill of Sale of even date herewith, marked as Exhibit "A" attached hereto, and made a part hereof;

(B) All of Seller's present growing crops located on lands described in University of Texas Leases Nos. 54 and 60, and an Assignment of such Leases, more fully described in Exhibits "B–1" and "B–2" attached hereto, and made a part hereof; and,

(C) All of Seller's undivided one-half (½) interest, valued at THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00), in that certain joint venture known as HCR GAS COMPANY, more fully described in the Assignment of Interest marked as Exhibit "C" attached hereto, and made a part hereof.[1]

The two leases (called the UT leases) expire June 30, 1990 and contain a total of 4,220.-

---

1. To the extent necessary, the exhibits to the Contract are described in this opinion; therefore, the exhibits are not attached to this opinion.

81 acres. H.C.R. Gas Company (H.C.R.). owns three producing gas wells, which provide natural gas to run the irrigation pumps supplying water to the UT leases.

The Debtors signed a promissory note for the purchase price of $280,000.00 payable to Richardson in semi-annual installments. The documents were placed in escrow with the Pecos County State Bank. The contract provides that if the Debtors fully perform, the escrow agent is to deliver all of the documents to the Debtors, including the promissory note marked "paid." If the Debtors breach the terms of the Contract then, upon instructions from Richardson, the escrow agent is to return the note to the Debtors and deliver all other documents to Richardson. The transaction is terminated thereby and Richardson retains all payments made on the note as liquidated damages. Title remains in Richardson until the note is fully paid.

The Contract places obligations on both Richardson and the Debtors. The Debtors are obligated to: 1) make installment payments to Richardson; 2) pay Richardson the annual rental on the UT leases; 3) abide by all obligations, covenants and conditions contained in the Contract and in the UT leases; 4) maintain all properties covered by the Contract in a good state of repair; and 5) pay ad valorem taxes and any other taxes assessed against the properties covered by the Contract. Richardson is obligated or allowed to: 1) make all lease payments to the University of Texas under the UT leases; 2) perform all obligations, covenants and conditions contained in the Contract and in the UT leases; 3) upon mutually agreeable terms, purchase livestock feed from the Debtors and pasture his livestock on the lands covered by the UT leases; 4) deduct the purchase price of feed and pasturage from installment payments due by the Debtors; 5) make necessary repairs to the properties covered by the Contract if not made by the Debtors;

and 6) in the event Debtors fully perform the Contract, obtain consent from the University of Texas to assign the UT leases to the Debtors.

On December 20, 1988, the Debtors filed for relief under Chapter 12 of the Bankruptcy Code.

### Positions of the Parties

Richardson states that the entire Contract is an executory contract and is identical in most respects to a basic land sales contract. He cites *In re Waldron*, 65 B.R. 169 (Bankr.N.D.Tex.1986), for the proposition that land sale contracts are executory contracts and not security devices. The Contract in the instant case concerns leases, rather than fee title to land. However, Richardson states that this is not a distinction since in Texas a lease is an interest in real estate, citing *Holcomb v. Lorino*, 124 Tex. 446, 79 S.W.2d 307, 310 (1935). Richardson argues that the Contract is one indivisible contract—a package deal—with each item inter-related and inter-connected to the others.

The Debtors assert that where title to chattels or goods is reserved to the seller under the guise of escrow with a third party, the arrangement constitutes a secured transaction controlled by Article 9 of the Texas Business & Commerce Code.[2] They point out that, since Richardson never filed a U.C.C. 1–101 et seq. financing statement, his unperfected security interest can be set aside under § 544 of the Bankruptcy Code.[3]

### DISCUSSION

#### Rights of a Debtor–in–Possession

When a farmer files a Chapter 12 petition, he becomes a Debtor–in–Possession.[4] A Debtor–in–Possession has all of the rights, powers, functions and duties of

---

**2.** The Texas Business & Commerce Code is the Texas adaptation of the Uniform Commercial Code. It is hereinafter referred to as T.B.C.C.

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

**4.** The Court reaches this conclusion from the language of Chapter 12 and reference to § 1204 which concerns removal of the Debtor as Debtor–in–Possession.

a trustee serving in a Chapter 11 case, including operating the Debtors' farm. § 1203.[5] Thus under § 544 the Debtor–in–Possession has the Trustee's power to avoid a transfer of the Debtors' property or of an obligation incurred by the Debtor that is voidable by a judicial lien creditor or a bona fide purchaser of real property.[6]

### Classification

The difficulty with the Contract is that it covers several types of property. Thus, when attacked by the § 544 avoiding powers, a different result might obtain for each type of property.

■■■ The bill of sale attached to the Contract specifically describes the farm equipment. The items are movable and, thus, are not fixtures. Therefore, the farm equipment constitutes "goods" as defined in T.B.C.C. § 2.105 (Vernon 1968) and § 9.105(a)(8) (Vernon Supp.1989).[7] Prior to the adoption of T.B.C.C., it was settled in Texas that all "attempted reservations of title [by the seller] simply make the instrument a chattel mortgage, and the status of the parties is that of mortgagor and mortgagee." *Petersime Incubator Co. v. Bunn*, 239 S.W.2d 416, 418 (Tex.Civ.App.—Beaumont 1951, writ dism'd). *See also*

*First Nat'l Bank of Fort Smith, Arkansas v. Phillips*, 261 F.2d 588 (5th Cir.1958). A sale of goods with retention of title by the seller now creates a security interest which must be perfected by proper filing. *Sommers v. I.B.M. (In re Legal Cooperatives, Inc.)*, 640 F.2d 686 (5th Cir.1981). See also T.B.C.C. § 9.105 Comment 1 (Vernon 1968). The parties allocated $250,000.00 of the purchase price to the equipment.

In *Stowers v. Mahon (In re Samuels & Co., Inc.)*, 526 F.2d 1238 (5th Cir.) (En Banc), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), the Fifth Circuit stated "the U.C.C. specifically limits the seller's ability to reserve title once he has voluntarily surrendered possession to the buyer." *Id.* at 1246. Quoting U.C.C. § 2.401(a), the Court added: "Any retention or reservation by the seller of the title (property) in goods ... delivered to the buyer is limited in effect to a reservation of a security interest." *Id.*

■■■ In the instant case, the Contract conveyed Richardson's interest in the growing crops. In Texas, growing crops are "goods". T.B.C.C. § 9.105(a)(8). Since the crops have long since been harvested and

---

5. There are certain limitations on these powers but they are inapplicable in this case.

6. Section 544 reads: Trustee as lien creditor and as successor to certain creditors and purchasers. (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of

the case, whether or not such a purchaser exists. (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

7. T.B.C.C. § 2.105(a) states "'[G]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action." T.B.C.C. § 9.105(a)(8) states: "'[G]oods' includes all things which are movable at the time the security interest attaches or which are fixtures (Section 9.313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals or the like (including oil and gas) before extraction. 'Goods' also includes standing timber which is to be cut and removed under a conveyance or contract for sale, the unborn young of animals, and growing crops."

the parties did not attach any value to the crops, they need not be considered further.

■ The parties placed assignments of the UT leases in escrow at the bank. The Debtors were obligated to make the semi-annual rental payments to Richardson, who, in turn, was obligated to make those payments to the University of Texas. The rental varied depending upon the number of cattle grazed on the land. The contract contained no separate consideration for the assignment of the leases. In Texas a lease is an interest in real estate. *Holcomb, supra.*

■ An assignment of Richardson's one-half interest in H.C.R. to the Debtors was placed in escrow with the bank. The Debtors already own the other one-half interest in the partnership. The interest in the partnership is a "general intangible" under T.B.C.C. § 9.106 (Vernon Supp.1989).[8]

■ Richardson asserts that the Contract should be treated as a whole and, since a portion of the Contract involves leases which are real property under Texas law, that the entire contract should be treated as an executory contract for the sale of real property. *See Waldron, supra.* The Contract itself argues against this conclusion. The Contract contains a separate purchase price for the equipment and the interest in the partnership. Also, it treats the leases separately, with Richardson simply acting as a conduit for the rental payments. Since it was clearly was the intent of the parties at the time they entered into the Contract not to consider the leases and growing crops valuable enough to give them a separate value from that given the personal property and equip-

ment, *Waldron* is distinguishable from this factual situation. In *Waldron* the land and fixtures were the primary consideration to the parties to the sale, and the major portion of the value thereof. In the instant action, however, the lease payments are not a portion of the consideration for the sale. Therefore, the Court finds this Contract is not an executory contract which the Debtors can be compelled to assume or reject.

■ In order for Richardson to perfect his lien on the farm equipment (goods) and the interest in the partnership (general intangible) against an attaching judicial lien creditor, he would have to properly file a financing statement pursuant to T.B.C.C. § 9.401. In 1982, the filing on the farm equipment should have been made in the county where the goods were kept[9] and, with respect to the general intangible the proper place to file would have been in the office of the Secretary of State of Texas. T.B.C.C. § 9.401 (Vernon 1968). Since Richardson did not file under T.B.C.C., his liens can be avoided by the Debtors–in–Possession under § 544.

## CONCLUSION

The Court finds the Contract is a secured transaction, not an executory contract. Since it is uncontested that Richardson did not file a financing statement, his security interest in the "goods" and "general intangible" covered by the contract is unperfected. Richardson retains a general unsecured claim against the Debtors for the balance due on the note. *See Horizon Processing Co. v. Charter Int'l Oil Co. (In re Charter Co.),* 49 B.R. 513, 517 (Bankr.M.D.Fla.1985).

---

**8.** T.B.C.C. § 9.106 states " '[G]eneral intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." The interest in the partnership is not "chattel paper" because it is not a writing which evidences both a monetary obligation and a security interest in or a lease of specific goods. T.B.C.C. § 9.105(a)(2). It is not a "document" which means documents of title and a particular kind of receipt. T.B.C.C. § 9.105(a)(6). It is not an "instrument" because it is neither a negotiable instrument, a certified security, or a writ-

ing which evidences a right to the payment of money. T.B.C.C. § 9.105(a)(9). It is not an "investment security" because it is neither traded on a recognized market nor generally recognized as a medium for investment. T.B.C.C. § 8.102.

**9.** By a 1985 amendment local filing for farm equipment was deleted and the proper place for filing is now in the office of Secretary of State of Texas.

The Debtors timely moved to assume the UT leases under § 365. The testimony at hearing conflicted as to whether the Debtors were current in the lease payments. The Debtors will be given thirty days after the entry of an order in this matter to provide the cure and assurance with respect to the leases required by § 365(b)(1). ORDER ACCORDINGLY.[10]

---

**10.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.